UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>VESTIS RETAIL GROUP, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No.: 16-10971 (CSS)<br><br>(Jointly Administered)<br><br>**Ref. Docket Nos. 14 and 16** |

## INTERIM ORDER (I) AUTHORIZING THE CONTINUATION OF STORE CLOSING SALES IN ACCORDANCE WITH THE DISPOSITION AGREEMENT AND SALE GUIDELINES, WITH SUCH SALES TO BE FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES; AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of Vestis Retail Group, LLC and its chapter 11 affiliates, the debtors and debtors in possession (the "Debtors") in the above-captioned jointly administered chapter 11 cases (the "Cases") for the entry of an interim order (this "Interim Order"), pursuant to sections 105, 363, 365, and 554 of the Bankruptcy Code and Bankruptcy Rules 2002, 6003, 6004, 6006, and 6007, (i) authorizing the Debtors to continue store-closing or similar-themed sales (the "Store Closing Sales") in accordance with the terms of (a) that certain Letter Agreement Governing Inventory Disposition, dated as of April 15, 2016 (the "Agreement"), by and between Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC, on the one hand (together, "Agent"), and EMS Operating Company, LLC, Bob's Stores, LLC, Sport Chalet, LLC, and Sport Chalet Team Sales, LLC, on the other hand, a copy of

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Vestis Retail Group, LLC (1295); Vestis Retail Financing, LLC (9362); EMS Operating Company, LLC (2061); Vestis IP Holdings, LLC (2459); Bob's Stores, LLC (4675); EMS Acquisition LLC (0322); Sport Chalet, LLC (0071); Sport Chalet Value Services, LLC (7320); and Sport Chalet Team Sales, LLC (8015). The Debtors' executive headquarters are located at 160 Corporate Court, Meriden, CT 06450.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

01:18582937.4

which is attached hereto as Exhibit 1, and (b) the store-closing sale guidelines (the "Sale Guidelines") attached hereto as Exhibit 2, with such sales to be free and clear of all liens, claims, encumbrances, and interests; and (ii) granting certain related relief, on an interim basis (collectively, the "Store Closing Relief"); and upon consideration of the First Day Declaration, the Store Closing Declaration, and the entire record of these Cases; and it appearing that the Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and it appearing that the Motion is a core matter pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and it appearing that venue of these Cases and of the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that there is good cause to waive the stay of Bankruptcy Rule 6004(h); and it appearing that due and adequate notice of the Motion has been given under the circumstances, and that no other or further notice need be given; and it appearing that the relief requested in the Motion is in the best interest of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation, and good and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**[3]

A.  The Debtors have advanced sound business reasons for entering into the Agreement, as set forth in the Motion and at the hearing on this Interim Order, and have demonstrated that entering into the Agreement is a reasonable exercise of the Debtors' business judgment and in the best interests of the Debtors and their estates.

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate. See Fed. R. Bankr. P. 7052.

B.      The conduct of the Store Closing Sales will provide an efficient means for the Debtors to maximize recoveries for their estates with respect to the Merchandise and the FF&E.

C.      The Agreement was negotiated, proposed, and entered into by the Agent and the Debtors without collusion or fraud, in good faith, and from arm's-length bargaining positions.

D.      The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein thereby satisfying Bankruptcy Rule 6003.

E.      Under the circumstances of these Cases, the Store Closing Sales are in the best interest of the Debtors' estates.

F.      The Debtors have represented that they are neither selling nor leasing personally identifiable information pursuant to the Motion, although the Agent will be authorized to distribute emails and promotional materials to the Debtors' customers.

G.      The entry of this Interim Order is in the best interest of the Debtors and their estates, creditors, interest holders, and all other parties in interest herein; and now therefore it is hereby

**ORDERED, ADJUDGED, AND DEGREED THAT:**

1.      The Motion is GRANTED, on an interim basis, as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on May 16, 2016, at 2:30 p.m., prevailing Eastern Time. All objections, if any, to the Motion shall be in writing and filed with this Court and served on the following by 4:00 p.m. (ET) on May 9, 2016: (i) the Debtors, 160 Corporate Court, Meriden, CT 06450, Attn: Mark T. Walsh, Chief Executive Officer; (ii) proposed counsel for the Debtors, (x) Klee, Tuchin,

Bogdanoff & Stern LLP, 1999 Avenue of the Stars, Thirty-Ninth Floor, Los Angeles, CA 90067, Attn: Michael L. Tuchin, Esq. and Lee R. Bogdanoff, Esq. and (y) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Robert S. Brady, Esq. and Robert F. Poppiti, Jr., Esq.; (iii) counsel for the Agent, Curtis, Mallet-Prevost, Colt & Mosle LLP, 101 Park Avenue, New York, NY 10178, Attn: Steven J. Reisman, Esq.; (iv) counsel to any statutory committee appointed in these Cases; and (v) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Jane M. Leamy, Esq. and Timothy Fox, Esq. If no objections to entry of the Proposed Final Order are timely received, this Court may enter such Proposed Final Order without further notice or hearing.

3. The Debtors and the Agent are authorized and empowered to take any and all further actions as may be reasonably necessary or appropriate to give effect to this Interim Order. The failure to include specifically any particular provision of the Agreement in this Interim Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Agreement and all of its provisions, payments, and transactions be authorized and approved as and to the extent provided for in this Interim Order.

4. To the extent of any conflict between this Interim Order, the Sale Guidelines, and the Agreement, the Sale Guidelines shall control over the Agreement, and the terms of this Interim Order shall control over all other documents.

5. Bankruptcy Rule 6003 has been satisfied. The requirements of Bankruptcy Rule 6007(a) are waived, to the extent applicable to the relief provided for herein.

6. Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall take effect immediately upon its entry.

7. The Agreement, a copy of which is attached hereto as <u>Exhibit 1</u>, is operative and effective on an interim basis pending the entry of the Proposed Final Order. The Debtors are authorized to act and perform in accordance with the terms of the Agreement, provided that, pending entry of the Final Order or further order of this Court, the Debtors shall not make any payments required by the Agreement to the Agent; provided, however, that with respect to costs and expenses incurred by the Agent pursuant to the Agreement from the Petition Date through the date of entry of the Final Order or further order of this Court, the Agent shall be entitled to reimbursement of such costs and expenses incurred pursuant to the Agreement immediately upon entry of the Final Order or further order of this Court.

8. Subject to the restrictions set forth in this Interim Order and the Sale Guidelines, the Debtors and the Agent hereby are authorized to take any and all actions as may be necessary or desirable to implement the Agreement and the Store Closing Sales; and each of the transactions contemplated by the Agreement and any actions taken by the Debtors and the Agent necessary or desirable to implement the Agreement or the Store Closing Sales prior to the date of this Interim Order, are hereby approved and ratified.

**A.     Authority to Engage in Store Closing Sales**

9. The Debtors are authorized, on an interim basis pending the Final Hearing, pursuant to 105(a) and 363(b)(1) of the Bankruptcy Code, to immediately continue and conduct Store Closing Sales at the Closing Stores in accordance with this Interim Order, the Sale Guidelines, and the Agreement.

10. The Sale Guidelines are approved in their entirety on an interim basis.

11. The Debtors are authorized to discontinue operations at the Closing Stores in accordance with this Interim Order and the Sale Guidelines.

12. The Debtors are authorized and directed to remit all proceeds from the Store Closing Sales to the DIP Agent for payment of the Debtors' secured obligations in accordance with the terms and conditions of the DIP Facility.

13. All entities that are presently in possession of some or all of the Merchandise or FF&E in which the Debtors hold an interest that are or may be subject to the Agreement or this Interim Order hereby are directed to surrender possession of such Merchandise or FF&E to the Debtors or the Agent.

14. Subject to the provisions herein in paragraphs 16, 17, 19, and 29, neither the Debtors nor the Agent nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any governmental unit (as defined in section 101(27) of the Bankruptcy Code) or landlord, to conduct the Store Closing Sales and to take the related actions authorized herein.

**B. Conduct of the Store Closing Sales**

15. All newspapers and other advertising media in which the Store Closing Sales may be advertised and all landlords are directed to accept this Interim Order as binding authority so as to authorize the Debtors and the Agent to conduct the Store Closing Sales and the sale of Merchandise, Additional Agent Goods, and FF&E pursuant to the Agreement, including, without limitation, to conduct and advertise the sale of the Merchandise, Additional Agent Goods, and FF&E in the manner contemplated by and in accordance with this Interim Order, the Sale Guidelines, and the Agreement.

16. Nothing in this Interim Order or the Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date

of entry of this Interim Order. Nothing contained in this Interim Order or in the Agreement shall in any way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code. Nothing herein shall be construed to be a determination that the Agent is an operator with respect to any environmental law or regulation. Moreover, the sale of the Merchandise, Additional Agent Goods, and FF&E shall not be exempt from, and the Agent shall be required to comply with, laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic, and consumer-protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"). Nothing in this Interim Order shall alter or affect the Debtors' and Agent's obligations to comply with all applicable federal safety laws and regulations. Nothing in this Interim Order shall be deemed to bar any governmental unit from enforcing General Laws in applicable non-bankruptcy forums, subject to the Debtors' or the Agent's right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Interim Order, or otherwise, pursuant to paragraph 31 hereunder. Notwithstanding any other provision in this Interim Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Interim Order and any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Interim Order shall be deemed to have made any rulings on any such issues.

17. Except to the extent of the reserved rights of governmental units expressly granted elsewhere in this Interim Order, during the interim sale period, the Debtors and Agent are hereby

authorized to take such actions as may be necessary and appropriate to implement the Agreement and to conduct the Store Closing Sales without necessity of further order of this Court as provided in the Agreement or the Sale Guidelines, including, but not limited to, advertising the sale as a "store closing sale," "sale on everything," "everything must go," or similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall Closing Stores, and at enclosed mall Closing Stores to the extent the applicable Closing Store entrance does not require entry into the enclosed mall common area), use of sign-walkers and street signage.

18. Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the sale of the Merchandise, Additional Agent Goods, and FF&E, to the extent that, prior to the Final Hearing, disputes arise during the course of Store Closing Sales regarding laws regulating the use of sign-walkers, banners, or other advertising, and the Debtors and the Agent are unable to resolve the matter consensually with a governmental unit, any party may request an immediate telephonic hearing with this Court pursuant to these provisions. Such hearing will, to the extent practicable, be scheduled initially no later than the earlier of (i) the Final Hearing or (ii) within two (2) business days of such request. This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

19. Except as expressly provided in the Agreement, the sale of the Merchandise, Additional Agent Goods, and FF&E shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision of any lease, sublease, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store Closing Sales, the rejection of leases, abandonment of assets, or "going dark" provisions. The Agent and landlords of the

Closing Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the Sale Guidelines without further order of the Court, and such Side Letters shall be binding as among the Agent and any such landlords, provided that nothing in such Side Letters affects the provisions of Paragraphs 16, 18, 19, 20, and 29 of this Interim Order. In the event of any conflict between the Sale Guidelines and any Side Letter, the terms of such Side Letter shall control.

20. Except as expressly provided for herein or in the Sale Guidelines, and except with respect to any governmental unit (as to which Paragraphs 16, 18, 19, 28, 29, and 31 of this Interim Order shall apply), no person or entity, including, but not limited to, any landlord, licensor, service provider, utility, and creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder continuation of the Store Closing Sales or the sale of Merchandise, Additional Agent Goods, or FF&E, or the advertising and promotion (including the posting of signs and exterior banners or the use of sign-walkers) of such sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service provider, utility, and creditor and all those acting for or on behalf of such parties, are prohibited and enjoined from (i) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Store Closing Sales or (ii) instituting any action or proceeding in any court (other than in the Bankruptcy Court) or administrative body seeking an order or judgment against, among others, the Debtors, the Agent, or the landlords at the Closing Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sales or sale of the Merchandise, Additional Agent Goods, or FF&E, or other liquidation sales at the Closing Stores, or seek to recover

damages for any breaches of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

21. In accordance with and subject to the terms and conditions of the Agreement, the Agent shall have the right to use the Closing Stores and all related Closing Store services, furniture, fixtures, equipment, and other assets of the Debtors for the purpose of conducting the Store Closing Sales, free of any interference from any entity or person, subject to compliance with the Sale Guidelines and this Interim Order and subject to Paragraphs 16, 18, 19 and 28 of this Interim Order.

22. The Agent shall accept the Debtors' validly issued rewards certificates and gift cards that were issued by the Debtors prior to the Sale Commencement Date in accordance with the Debtors' rewards certificate and gift card policies and procedures as they existed on the Petition Date, and accept returns of merchandise sold by the Debtors prior to the Sale Commencement Date, provided that such return is otherwise in compliance with the Debtors' return policies in effect as of the date such item was purchased and the customer is not repurchasing the same item so as to take advantage of the sale price offered by the Agent; *provided, however*, that the foregoing provisions shall only be applicable at Sport Chalet Closing Stores through April 29, 2016 and thereafter no Sport Chalet rewards certificates, gift cards, returns, exchanges, or other loyalty or customer programs promotions will be accepted at the Closing Stores, provided, however, that the Debtors are authorized, with the consent of the DIP Agent and in the DIP Agent's sole discretion, to extend the period during which Sport Chalet gift cards are honored at Sport Chalet retail stores during the Store Closing Sales.[4]

---

[4] As described in more detail in the *Debtors' Motion for Entry of an Order Authorizing Maintenance, Administration, and Continuation of Certain Customer Programs* [Docket No. 10], shortly before the Petition Date, in conjunction with the Sport Chalet Store Closing Sales and in order to ease the burdens imposed on customers and encourage use of the Bob's Stores and EMS on-line offerings, the Debtors expanded the permitted use of Sport

23. All sales of Merchandise, Additional Agent Goods, and FF&E shall be "as is" and final. However, as to the Closing Stores, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales." Further, as to the Closing Stores only, the Debtors and the Agent shall accept the return of any goods purchased during the Store Closing Sales, which contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase, for a full refund, provided that the consumer must return the merchandise within seven (7) days of purchase, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect. Signs stating that "Refunds may be made only for merchandise having a latent defect, when returned with a receipt within 7 days of purchase" will be posted at the cash-register areas of the Closing Stores. Returns, if permitted, related to the purchase of Merchandise, Additional Agent Goods, and FF&E shall not be accepted at stores that are not participating in the Store Closing Sales.

24. The Agent shall not be liable for sales taxes except as expressly provided in the Agreement, and the payment of any and all sales taxes is the responsibility of the Debtors. The Debtors are directed to pay and/or remit all taxes arising from the Store Closing Sales to the applicable governmental units as and when due, provided that in the case of a bona fide dispute the Debtors are only directed to pay and/or remit such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable governmental unit. For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay

---

(continued...)

Chalet Gift Cards. Specifically, for a period from the Sale Commencement Date through July 29, 2016 (the "Expansion Period"), Sport Chalet Gift Card holders are permitted to exchange such Gift Cards for EMS or Bob's Stores Gift Cards of the same value (the "Exchange Gift Cards") (in addition to being able to use them for Sport Chalet retail purchases through April 29, 2016).

any creditor or any other party, other than the applicable governmental unit for which the sales taxes are collected. The Agent shall collect, remit to the Debtors, and account for sales taxes as and to the extent provided in the Agreement. This Interim Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

25. Pursuant to section 363(f) of the Bankruptcy Code, the Agent, on behalf of the Debtors, is authorized to sell the Merchandise and FF&E pursuant to the Agreement and in accordance with the Sale Guidelines. All sales of Merchandise or FF&E pursuant to the Store Closing Sales, whether by the Agent or the Debtors, shall be, free and clear of claims, encumbrances, defenses (including, without limitation, rights of setoff and recoupment) and interests, including, without limitation, security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, deeds of trust, hypothecations, liens, encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state, and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax, labor, ERISA, CERCLA, alter ego and other liabilities, causes of action, contract rights, and claims, to the fullest extent of the law, in each case, of any kind or nature (including, without limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether pre-petition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory,

matured or unmatured, legal or equitable (collectively, "Encumbrances"); provided, however, that any such Encumbrances shall attach to the applicable proceeds of the sale of Merchandise and FF&E with the same validity and priority, and to the same extent that any such Encumbrances had with respect to the Merchandise and FF&E prior to such sale, subject to any claims and defenses that any party may possess with respect thereto and subject to the Agent's fees and expenses (as provided in the Agreement).

26. To the extent that the Debtors propose to sell or abandon FF&E that may contain personal or confidential information about the Debtors' employees or customers (the "Confidential Information"), the Debtors shall remove the Confidential Information from such items of FF&E before such sale or abandonment.

27. The Debtors and the Agent (as the case may be) are authorized and empowered to transfer Merchandise and FF&E among the Closing Stores and other stores operated by the Debtors. The Agent is authorized to sell the Debtors' FF&E and abandon the same, in each case, as provided for and in accordance with the terms of the Agreement.

C. **Dispute Resolution Procedures With Governmental Units**

28. To the extent that the sale of Merchandise or FF&E is subject to any federal, state, or local statute, ordinance, rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory-liquidation sales, or bulk-sale laws (collectively, "GOB Laws"), including laws restricting safe, professional, non-deceptive, and customary advertising such as signs, banners, posting of signage, and use of sign-walkers in connection with the sale and including ordinances establishing license or permit requirements, waiting periods, time limits, or bulk-sale restrictions, or any Fast Pay Laws, that would otherwise apply solely to the sale of the Merchandise, Additional Agent Goods, or FF&E (collectively, the "Liquidation Laws"), the dispute resolution procedures in this section shall apply.

29. Provided that the Store Closing Sales and the sale of Merchandise and FF&E are conducted in accordance with the terms of this Interim Order, the Agreement and the Sale Guidelines, and in light of the provisions in the laws of many governmental units that exempt court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance with any GOB Laws and Liquidation Laws and, subject to Paragraphs 16, 18, 19 and 28 herein, and are authorized to conduct the Store Closing Sales in accordance with the terms of this Order and the Sale Guidelines without the necessity of further showing compliance with any such GOB Laws and Liquidation Laws.

30. Within three (3) business days of entry of this Interim Order, the Debtors shall serve copies of this Interim Order, the Agreement, and the Sale Guidelines via e-mail, facsimile, or regular mail on: (i) the Attorney General's office for each state where the Store Closing Sales are being held, (ii) the county consumer protection agency or similar agency for each county where the Store Closing Sales are being held, (iii) the division of consumer protection for each state where the Store Closing Sales are being held; (iv) the chief legal counsel for the local jurisdiction; and (v) the Debtors' landlords of the Closing Stores.

31. To the extent that between the Petition Date and the date of the Final Hearing there is a dispute arising from or relating to the Store Closing Sales, this Interim Order, the Agreement, or the Sale Guidelines, which dispute relates to any GOB Laws or Liquidation Laws (a "Reserved Dispute"), the following procedures shall apply:

   (a) This Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within fourteen (14) days following service of this Interim Order, any governmental unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute (a "Dispute Notice") on the following parties so as to ensure delivery thereof within one (1) business day thereafter: (i) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000

    North King Street, Wilmington, DE 19801, Attn. Robert S. Brady, Esq. and Robert F. Poppiti, Esq., rbrady@ycst.com and rpoppiti@ycst.com, and (ii) Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, Thirty-Ninth Floor, Los Angeles, CA 90067, Attn: Michael L. Tuchin, Esq. and Lee R. Bogdanoff, Esq., mtuchin@ktbslaw.com and lbogdanoff@ktbslaw.com.

  (b)  If the Debtors, the Agent, and the governmental unit are unable to resolve the Reserved Dispute within fourteen (14) days of service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "<u>Dispute Resolution Motion</u>").

Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Interim Order or to limit or interfere with the Debtors' or the Agent's ability to conduct or to continue the Store Closing Sales pursuant to this Interim Order and the Agreement, absent further order of this Court.

**D. Other Provisions**

  32. The Agent shall be permitted to include in the Sale at Sport Chalet Additional Agent Goods in accordance with the terms and provisions of the Agreement. All transactions relating to the Additional Agent Goods are, shall be construed as, and are acknowledged by the Debtors to be a true consignment from Agent to the Debtors under Article 9 of the Uniform Commercial Code in effect in the State of Delaware (the "<u>UCC</u>"). Agent is hereby granted a first priority security interest in (i) the Additional Agent Goods and (ii) the Additional Agent Goods proceeds, which security interest shall be deemed perfected pursuant to this Interim Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that Agent is hereby authorized to deliver any notices and file any financing statements and amendments thereof under the applicable UCC identifying Agent's interest in the Additional Agent Goods (and any proceeds from the sale thereof) as consigned goods thereunder and the Debtors as the consignee therefor, and Agent's security interest in such

Additional Agent Goods and Additional Agent Goods proceeds). As part of each weekly reconciliation, the Debtors shall turnover all proceeds from the sale of Additional Agent Goods to the Agent, net of the five percent (5.0%) fee payable to the Debtors pursuant to the Agreement.

33. The Agreement and related documents may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court, provided that notice of any material modification, amendment, or supplement shall be provided to the U.S. Trustee and counsel to any statutory committee appointed in these Cases within two (2) business days of the effective date of any such material change.

34. On a confidential basis and for professionals' "eyes only," and upon the written (including email) request of the U.S. Trustee, the DIP Lenders, or counsel for any statutory committee appointed in these Cases, the Debtors shall provide such requesting party, if any, with copies of periodic reports concerning the Store Closing Sales that are prepared by the Debtors, their professionals, or the Agent; provided, however, that the foregoing shall not require the Debtors, their professionals, or the Agent to prepare or undertake to prepare any additional or new reporting not otherwise being prepared by the Debtors, their professionals, or the Agent in connection with the Store Closing Sales.

35. No later than five (5) days prior to the Final Hearing, the Agent shall file a declaration disclosing connections to the Debtors, their creditors, and other parties in interest in these Cases.

36. The Agent shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against the Agent, in each case, other than as expressly provided for in the Agreement.

37. Except with respect to any governmental unit (as to which the provisions of Paragraphs 16, 18, 19, 28, 29, and 31 of this Interim Order shall apply), this Court shall retain exclusive jurisdiction with regard to all issues or disputes relating to this Interim Order or the Agreement, including, but not limited to, (i) any claim or issue relating to any efforts by any party or person to prohibit, restrict, or in any way limit banner and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional, and non-deceptive manner; (ii) any claim of the Debtors, the landlords, or the Agent for protection from interference with the Store Closing Sales; (iii) any other disputes related to the Store Closing Sales; and (iv) protection of the Debtors and the Agent against any assertions of encumbrances. No such parties or person shall take any action against the Debtors, the Agent, the landlords, or the Store Closing Sales until this Court has resolved such dispute. This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

38. This Court shall retain jurisdiction and power to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Interim Order.

Dated: Wilmington, Delaware
April 19, 2016

_____
Laurie Selber Silverstein
United States Bankruptcy Judge

01:18582937.4