**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>VESTIS RETAIL GROUP, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No.: 16-10971 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date: May 16, 2016 at 2:30 p.m. (ET)**<br>**Objection Deadline: May 9, 2016 at 4:00 p.m. (ET)** |

**APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT AND APPROVING COMPENSATION OF LINCOLN PARTNERS ADVISORS LLC AS INVESTMENT BANKER TO THE DEBTORS AND DEBTORS IN POSSESSION *NUNC PRO TUNC* TO PETITION DATE AND MODIFYING CERTAIN REQUIREMENTS UNDER LOCAL RULE 2016-2**

Vestis Retail Group, LLC and its chapter 11 affiliates, the debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), hereby apply to the Court (the "Application") for entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 327 and 328 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing the employment and retention of Lincoln Partners Advisors LLC ("Lincoln") as investment banker to the Debtors *nunc pro tunc* to the Petition Date (as defined herein). In support of this Application, the Debtors rely on the *Declaration of Alexander W. Stevenson in Support of Application for Order Authorizing Employment and Approving Compensation of Lincoln Partners*

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Vestis Retail Group, LLC (1295); Vestis Retail Financing, LLC (9362); EMS Operating Company, LLC (2061); Vestis IP Holdings, LLC (2459); Bob's Stores, LLC (4675); EMS Acquisition LLC (0322); Sport Chalet, LLC (0071); Sport Chalet Value Services, LLC (7320); and Sport Chalet Team Sales, LLC (8015). The Debtors' executive headquarters are located at 160 Corporate Court, Meriden, CT 06450.

*Advisors LLC as Investment Banker to the Debtors and Debtors in Possession* Nunc Pro Tunc *to Petition Date and Modifying Certain Requirements Under Local Rule 2016-2*, attached as **Exhibit B** hereto (the "Stevenson Declaration").  In further support of the Application, the Debtors respectfully represent as follows:

## I. JURISDICTION

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over the Cases and the Application pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of the Cases and the Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of a final judgment or order with respect to the Application if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. The statutory and legal predicates for the relief requested herein are Bankruptcy Code sections 327 and 328, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-2. Compensation will be in accordance with section 328(a) of the Bankruptcy Code.

## II. BACKGROUND

4. On April 18, 2016 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.

5. The Debtors are authorized to continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

To date, no trustee, examiner, or statutory committee has been appointed in the Cases by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee").

6. The detailed factual background relating to the Debtors and the commencement of these Cases is set forth in the *Declaration of Mark T. Walsh in Support of First Day Motions* [Docket No. 2] (the "First Day Declaration"),[2] which is fully incorporated herein by reference.

### III. RELIEF REQUESTED

7. The Debtors respectfully request entry of an order as proposed in Exhibit A (the "Proposed Order") (i) authorizing the Debtors to retain and employ Lincoln as investment banker to the Debtors, (ii) approving the terms and conditions contained in that certain letter agreement, dated as of April 16, 2016, (the "Engagement Letter") (the Engagement Letter amended and restated in its entirety and superseded the First Amended and Restated Agreement (as defined in the Engagement Letter) between Lincoln and the Debtors dated April 12, 2016, which superseded a prior letter agreement between Lincoln and the Debtors dated March 22, 2016 (the "Original Agreement" and, together with the First Amended and Restated Agreement, the "Prior Letter Agreement") which is of no further force and effect), under which Lincoln will be retained and compensated by the Debtors' estates, and (iii) granting related relief. A copy of the Engagement Letter is attached as **Exhibit C** hereto.[3]

### IV. BASIS FOR RELIEF REQUESTED

8. Under section 327 of the Bankruptcy Code, a debtor-in-possession may employ one or more professionals that do not hold or represent an interest adverse to the estate and that are

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the First Day Declaration.

[3] Any statements contained herein concerning the terms and conditions of the Engagement Letter are qualified entirely by reference to the Engagement Letter.

01:18604061.2

3

disinterested persons, to assist the debtor-in-possession in carrying out its duties under the Bankruptcy Code.

9.  Section 328 of the Bankruptcy Code provides, in pertinent part, that under section 327 of the Bankruptcy Code a professional may be employed "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage fee basis, or on a contingent fee basis." *See* 11 U.S.C. § 328(a).

10. Bankruptcy Rule 2014 further requires that an application for retention of a professional person include:

> [S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee

*See* Fed. R. Bankr. P. 2014(a).

11. Moreover, Local Rule 2014-1 further requires that "[a]ny entity seeking approval of a professional person pursuant to 11 U.S.C. § 327 . . . shall file with the court a motion, a supporting affidavit or verified statement of the professional person and a proposed order for approval." *See* Del. Bankr. L.R. 2014-1(a).

12. By this Application, the Debtors request that the Court approve the employment and compensation arrangements described in the Engagement Letter pursuant to section 328(a) of the Bankruptcy Code. The employment arrangements contained in the Engagement Letter are beneficial to the Debtors' estates and the compensation arrangements provide certainty and proper inducement for Lincoln to act expeditiously and prudently with respect to the matters for which it will be employed.

01:18604061.2

4

## V. NECESSITY

13. As described more fully in the Stevenson Declaration, the Debtors originally engaged Lincoln as their investment banker in March 2016 to assist the Debtors in connection with one or more potential transactions (a "Transaction") including:

- (a) the acquisition, directly or indirectly, by a person or group (as such terms are defined in Section 13(d) of the Securities Exchange Act of 1934, as amended) in a single transaction or series of transactions of (1) the equity or assets of a Material Business Unit (as defined in the Engagement Letter) as a going concern; (2) all or a material portion of the assets or operations of the Debtors as a going concern or pursuant to a Liquidation Sale Agreement (as defined in the Engagement Letter); or (3) more than 50% of the equity of the Debtors; or (b) any merger, consolidation, reorganization, recapitalization, equity issuance, business combination, joint venture, lease, or other transaction including any transaction pursuant to which either (i) the assets or equity referenced in (a) above are transferred to, acquired by, or combined with, a party, including, without limitation, any sale consummated pursuant to an asset purchase agreement among the Debtors and Vestis BSI Funding, LLC, a Delaware limited liability company, or (ii) holders of the Debtors' membership interests receive distributions or proceeds (a "Sale Transaction");

- the issuance, sale, or placement of any equity, equity-linked or debt securities, instruments, or obligations of the Debtors with one or more lenders and/or investors in connection with a debtor-in-possession financing, a plan of reorganization under Chapter 11 of the United States Code (not including a liquidation of the Debtors' assets and business units under either Chapter 7 of the United States Code or a plan of liquidation confirmed under Chapter 11 of the United States Code) (a "Plan"), or the Debtors' exit from a proceeding under Title 11 of the United States Code, an assignment for the benefit of creditors, a state or federal receivership action, or any other court-administered insolvency proceeding (whether voluntarily or involuntarily) (each a "Proceeding") as a going concern (a "Financing Transaction"); or

- a restructuring of existing indebtedness (effected by (a) an exchange of existing securities, instruments, or obligations for new securities, instruments, or obligations; cash; or a combination thereof, (b) an amendment to existing securities, instruments, or obligations, or (c) a Plan (a "Restructuring Transaction").

14. The Debtors submit that a successful Transaction(s) is the best way to maximize the value of the Debtors' assets. To that end, Lincoln has been working since March 22, 2016 to, among other activities, prepare a confidential information presentation and other materials describing the Debtors' business, operations, properties, financial condition and financial prospects

01:18604061.2

5

for distribution to interested parties. Furthermore, Lincoln has also provided advice on matters related to the proposed DIP Financing (including but not limited to contacting potential sources of alternative DIP financing), financial projections, valuation analyses, and certain other strategic matters critical to the Debtors. The Debtors seek to retain Lincoln to serve as their investment banker in connection with the Cases, so that they may continue to assist the Debtors in providing the services described herein.

## VI.   LINCOLN'S QUALIFICATIONS

15.    The Debtors chose Lincoln to act as their investment banker in connection with the Transaction because Lincoln is an internationally recognized investment banking firm engaged in, among other things, mergers and acquisitions, restructurings, leveraged buyouts, competitive biddings, private placements, and valuations for corporate and other purposes. Lincoln has: (i) substantial experience with, and knowledge of, companies involved in retail, consumer products, and other merchandising-related industries; (ii) extensive knowledge of potential buyers interested in the Debtors' industry; and (iii) substantial sell-side investment banking and restructuring transaction experience. As a result, the Debtors believe that Lincoln is well qualified to perform these services and represent the Debtors' interests in the Cases.

## VII.   LINCOLN'S DISINTERESTEDNESS

16.    To the best of the Debtors' knowledge, information and belief, and based entirely and in reliance upon the Stevenson Declaration: (a) Lincoln is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code and referenced by section 328(c) of the Bankruptcy Code, and holds no interest materially adverse to the Debtors, their creditors, and shareholders for the matters for which Lincoln is to be employed; and (b) Lincoln has no connection to the Debtors, their creditors, shareholders, or related parties herein except as disclosed in the Stevenson Declaration. Moreover,

01:18604061.2

the retention and employment of Lincoln is necessary and in the best interests of the Debtors, their estates, creditors, and equity interest holders.

17.     Also, to the best of the Debtors' knowledge, information, and belief, and based entirely and in reliance upon the Stevenson Declaration, to the best of Debtor's knowledge, information and belief, none of Lincoln's past or current engagements would or does appear to create an interest materially adverse to the interests of the Debtors, creditors, or equity security holders in the Cases.  As such, the Debtors believe that Lincoln is disinterested and holds no materially adverse interest as to the matters upon which it is to be retained.  To the extent Lincoln discovers any facts bearing on the matters described herein during the period of Lincoln's retention, it will supplement the information contained in the Stevenson Declaration.

18.     Prior to seeking to materially utilize any of its U.S. or international affiliates (defined in the Engagement Letter as the "Lincoln Affiliates"), Lincoln shall file a declaration of an authorized representative of such Lincoln Affiliate attesting as to the "disinterestedness" of such entity.

## VIII.  SCOPE OF SERVICES

19.     The Engagement Letter governs the relationship between Lincoln and the Debtors. The terms and conditions of the Engagement Letter were heavily negotiated, and reflect the parties' mutual agreement as to the substantial efforts and resources that will be required in this engagement.  Under the Engagement Letter, Lincoln will perform such financial and investment banking services for the Debtors in connection with the Transactions as are customary and

01:18604061.2

appropriate in transactions of type, including on the structure, negotiation strategy, valuation analyses, financial terms, and other financial matters, including, as the Debtors reasonably request:[4]

    (a)    With respect to a Sale Transaction: (i) identifying potential parties who might be interested in entering into a Sale Transaction; (ii) assisting with the preparation of an information memorandum describing the Debtors, the business, and/or the assets to be sold (the "<u>Sale Information Memorandum</u>") (to be made available and used in discussions with potential parties to a Sale Transaction only once the materials and their use are approved by the Debtors and Lincoln and any potential parties to a Sales Transaction have executed a confidentiality agreement, which will be pre-approved by the Debtors); (iii) formulating and recommending a strategy for pursuing a potential Sale Transaction; (iv) contacting and eliciting interest from potential parties to a Sale Transaction; (v) conveying information desired by potential parties to a Sale Transaction not contained in the Sale Information Memorandum; (vi) reviewing and evaluating potential parties to a Sale Transaction; (vii) reviewing and analyzing proposals regarding a potential Sale Transaction; (viii) providing an indication of value of the business or its assets in writing or in testimony in any Proceeding; and (ix) participating in hearings before the relevant bankruptcy court in any Proceeding, if applicable, with respect to matters upon which Lincoln has provided advice, including, as relevant, coordinating with the Debtors' legal counsel with respect to testimony in connection therewith.

    (b)    With respect to a Financing Transaction: (i) advising the Debtors regarding an appropriate capital structure for the Debtors, including the potential pricing and terms for any new senior debt, junior capital, and/or equity securities; (ii) identifying financing sources who might be interested in participating in a Financing Transaction; (iii) assisting with the preparation of an information memorandum for delivery to financing sources describing the Debtors (the "<u>Financing Information Memorandum</u>" and, collectively with the Sale Information Memorandum, the "<u>Information Memorandum</u>") (to be made available and used in discussions with potential parties to a Financing Transaction only once the materials and their use are approved by the Debtors and Lincoln and any potential parties to a Financing Transaction have executed a confidentiality agreement, which will be pre-approved by the Debtors); (iv) formulating and recommending a strategy for pursuing a potential Financing Transaction; (v) contacting and eliciting interest from various financing sources, including senior lenders, junior capital providers, and/or equity investors, as appropriate; (vi) conveying information desired by financing sources not contained in the Financing Information Memorandum; (vii) reviewing and analyzing all proposals, both preliminary and firm, received from financing sources relating to a Financing Transaction; and (viii) participating in hearings before the relevant bankruptcy court in any Proceeding, if applicable, with respect to matters upon which Lincoln has provided advice, including, as

---

[4] Summaries and other descriptions of the terms of the Engagement Letter set forth herein are not intended to replace the terms of the Engagement Letter in their entirety, which shall govern to the extent of any inconsistency between this Application and the Engagement Letter. That said, the Proposed Order is intended to modify or qualify the Engagement Letter in certain respects (as is necessary in connection with Lincoln's retention in the chapter 11 cases) and shall control in the event of any inconsistencies between the Application, the Engagement Letter and the Proposed Order.

01:18604061.2

relevant, coordinating with the Debtors' legal counsel with respect to testimony in connection therewith.

(c)     With respect to a Restructuring Transaction: (i) assisting the Debtors in developing a restructuring plan; (ii) assisting the Debtors in structuring any securities to be issued pursuant to the restructuring plan; (iii) assisting the Debtors in negotiating the restructuring plan with lenders, creditors, and other interested parties; (iv) assisting the Debtors in developing a Plan, if the Debtors file a voluntary case under the Bankruptcy Code; (v) providing an indication of value of the business or its assets in writing or in testimony in any Proceeding; and (vi) participating in hearings before the relevant bankruptcy court, if applicable, with respect to matters upon which Lincoln has provided advice, including, as relevant, coordinating with the Debtors' legal counsel with respect to testimony in connection therewith.

20.    It is necessary that the Debtors employ Lincoln to render the foregoing professional services.  The Debtors believe that the services will not duplicate the services that other professionals will be providing the Debtors in the Cases.  Specifically, Lincoln will carry out unique functions and will use reasonable efforts to coordinate with the Debtors and other professionals retained in the Cases to avoid the unnecessary duplication of services.

## IX.    COMPENSATION

21.    As set forth with greater specificity in Engagement Letter,  the Debtors and Lincoln have agreed to the following terms of compensation (collectively, the "Transaction Fee"):

(a)     Monthly Fee.  A monthly non-refundable cash fee (the "Monthly Fee") of $125,000, the first installation of which shall be earned and payable in cash on April 22, 2016, with each subsequently monthly fee being earned and payable in cash on each monthly anniversary thereof; provided, however, that the maximum amount of Monthly Fees shall be $1,125,000, inclusive of any Monthly Fees paid under the Prior Letter Agreement.

(b)     Sale Transaction Fee.  A fee (the "Sale Transaction Fee") equal to 1.4% of the Enterprise Value (as defined in the Engagement Letter), if a Sale Transaction is consummated, reduced by the previous receipt of Transaction Fees pursuant to the Engagement Letter.  The minimum Sale Transaction fee shall be $1,125,000, provided that in the event of the consummation of multiple Sale Transactions, the application of the minimum Sale Transaction Fee shall not result in a higher amount of aggregate Sale Transaction Fees being payable under the Engagement Letter, unless the total of all aggregate Sale Transaction Fees calculated without regard to the minimum Sale Transaction Fee would be less than $1,125,000.  Subject to the terms of the Engagement Letter, the Sale Transaction Fee shall be earned, due, and payable in cash at the time of the closing of the Sale Transaction.  In the event that a Sale Transaction is pursuant to a Liquidation Sale

Agreement contemplating the liquidation of substantially all of the assets of a Material Business Unit (as defined in the Engagement Letter) of the Debtors other than on a going-concern basis, Lincoln Advisors will be entitled to a fee of 50% of the Transaction Fee that would otherwise be due, but only if the Debtors direct Lincoln (either prior to or after the Liquidation Sale Agreement) to approach other investors or acquirers with respect to the purchase of the Material Business Unit on a going-concern basis.

(c)    Financing Transaction Fee.  In connection with a Financing Transaction, other than a DIP Financing (as defined in the Engagement Letter), a fee (the "Financing Transaction Fee") equal to (i) 1% of the amount of the committed amount of the first lien debt; plus (ii) 2.5% on the committed amount of the subordinated first lien or second lien debt; plus (iii) 5% on any committed amount of subordinated debt, preferred stock, or common stock raised (in each case in the preceding clauses (i) through (iii), whether or not funded at the closing of the Financing Transaction) if a Financing Transaction is consummated, reduced by the previous receipt of Transaction Fees pursuant to the Engagement Letter.  The minimum Financing Transaction Fee shall be $1,000,000.  Subject to the terms of the Engagement Letter, the Financing Transaction Fee shall be earned, due, and payable in cash at the time of the closing of the Financing Transaction.  In the event that capital raised pursuant to a Financing Transaction, other than a DIP Financing, is provided by the incumbent lenders to the Debtors as of the date of the Engagement Letter (other than the Versa Capital Management, LLC (the "Sponsor")), then the fee for that portion of the capital provided by such incumbent lenders shall be reduced by 50%.  In the even that new capital is raised from the Sponsor, the Financing Fee for that portion of the capital provided by the Sponsor shall be zero.  In connection with a Financing Transaction that is a DIP Financing, Lincoln shall earn and be paid a cash fee of $200,000 payable upon the final approval of such financing.

(d)    Restructuring Transaction Fee.  A fee (the "Restructuring Transaction Fee") equal to $1,125,000 if a Restructuring Transaction is consummated.  A Restructuring Fee shall be, in addition to the retainers, earned, due, and payable in cash at the time of the closing of a Restructuring Transaction.

(e)    Any Transaction Fee (once and without duplication) shall be reduced by 100% of all monthly fees paid pursuant to the Prior Letter Agreement and the first five Monthly Fees and 50% of any other Monthly Fees paid to Lincoln.  Any Restructuring Transaction Fee earned by Lincoln will be reduced by 50% of any Sale Transaction Fee or Financing Transaction Fee paid to Lincoln provided, however, that the Restructuring Transaction Fee shall never be reduced below zero.  Any portion of a Financing Transaction Fee earned on a Financing Transaction subsequent to a DIP Financing that is attributable to capital provided in such Financing Transaction from a party that previously provided capital in the DIP Financing shall be reduced by any DIP Financing Fee paid to Lincoln dollar-for-dollar (up to $200,000 in the aggregate without duplication).

(f)    The aggregate amount of all Transaction Fees earned under the Engagement Letter will under no circumstance exceed $2.0 million.

01:18604061.2

(g)     Expenses.  The Debtors will also reimburse Lincoln for all reasonable out-of-pocket expenses incurred by Lincoln in connection with the matters contemplated in the Engagement Letter, including transportation, lodging, meals, communications, color copying, color printing, document services, and legal counsel (including, but not limited to, the defense against any fee objections in a Proceeding) and other professional advisor fees and expenses; provided that such expenses for any particular item (or series of related items) shall not exceed $10,000 and in the aggregate shall not exceed $50,000 without the Debtors' prior written consent, which consent shall not be unreasonably withheld or delayed (it being agreed that the foregoing shall not apply to expenses subject to Exhibit I to the Engagement Letter, titled "Indemnification and Remedies").

(h)     To the extent Lincoln's personnel assist in, or provide testimony in trial or depositions for any action, suit, or proceeding relating to a Transaction or Lincoln's engagement following the consummation of a Transaction or termination of Lincoln's engagement, the Debtors shall pay Lincoln a per person, per diem charge of $2,000, together with a reimbursement of all out-of-pocket expenses and disbursements, including reasonable attorneys' fees and disbursements, for the services of such persons.

22.     The Debtors believe that the compensation structure described in the Engagement Letter is reasonable and that it is comparable to those generally charged by investment banking and financial advisory firms of similar stature to Lincoln for comparable engagements.

23.     The hours worked, the results achieved, and the ultimate benefit to the Debtors of the work performed by Lincoln in connection with the engagement may vary and this has been taken into account in setting the above fees.

24.     In addition, given the numerous issues which Lincoln may be required to address in the performance of its services under the Engagement Letter, Lincoln's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Lincoln's services for engagements of this nature in an out-of-court context, the Debtors believe that the fee arrangements set forth in the Engagement Letter, including the Transaction Fee, are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

25.     Pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, Lincoln will apply to the Court for final allowance of compensation and reimbursement of expenses (but shall not be required to file monthly or interim fee applications),

01:18604061.2

which may be incorporated with a motion seeking approval of the Transaction. Because Lincoln is being compensated with a fixed Transaction Fee at the conclusion of its engagement, the Debtors request that Lincoln not be required to submit detailed time records in support of its final fee application.

## X.    INDEMNIFICATION AND CONTRIBUTION PROVISIONS

26. As set forth more fully in <u>Exhibit I</u> to the Engagement Letter, if the Application is granted the Debtors will indemnify and hold harmless Lincoln and its affiliates and their respective officers, directors, members, employees, agents, representatives, affiliates, or any person controlling Lincoln or any of its affiliates, to the full extent lawful, from and against any losses, claims, damages, expenses and liabilities (collectively, "<u>Losses</u>") related to or arising out of (i) Lincoln's engagement contemplated by the Engagement Letter, or (ii) any untrue statement or alleged untrue statement of a material fact or the omission or alleged omission to state therein a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which they were made, or (iii) otherwise related to the engagement or any transaction or conduct in connection therewith, except that this clause (iii) shall not apply with respect to any losses that are finally judicially determined to have resulted primarily from the gross negligence, bad faith or willful misconduct of such indemnified party; *provided*, *however*, that the Debtors' obligations as set forth in the Engagement Letter and as described in this Paragraph shall be subject to the provisions of the Proposed Order during the pendency of these Cases.

## XI.    NOTICE

27. Notice of this Application will be provided to the following parties, or their counsel, if known: (i) the U.S. Trustee; (ii) holders of the forty (40) largest unsecured claims on a consolidated basis against the Debtors; (iii) the DIP Agent; (iv) Pre-Petition Term Agent; (v) the Third Lien Agent; and (vi) all parties who, as of the filing of this Application, have filed a notice of

01:18604061.2

appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## XII.  NO PRIOR REQUEST

28.     The Debtors have not made any prior request for the relief sought in this Application to this or any other Court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## XIII.  CONCLUSION

    WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order granting the relief requested in this Application and such other and further relief as the Court deems just and proper.

Dated:  April 22, 2016                      VESTIS RETAIL GROUP, LLC
                                                  (on behalf of itself and the other Debtors, other than Vestis Retail Financing, LLC)

                                                  */s/ Mark T. Walsh*
                                                  Mark T. Walsh
                                                  Chief Executive Officer

                                                  VESTIS RETAIL FINANCING, LLC

                                                  */s/ William R. Quinn*
                                                  William R. Quinn
                                                  Authorized Person