## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re<br><br>VRG Liquidating, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No.:  16-10971 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date:  Mach 26, 2018 at 2:00 p.m. (ET)**<br>**Obj. Deadline:  March 16, 2018 at 4:00 p.m. (ET)** |

### DEBTORS' MOTION FOR ORDERS (I) APPROVING BIDDING PROCEDURES AND SCHEDULING AN AUCTION AND SALE HEARING WITH RESPECT TO THE SALE OF CERTAIN LITIGATION CLAIMS, (II) AUTHORIZING AND APPROVING THE SALE OF SUCH CLAIMS, AND (III) GRANTING RELATED RELIEF

VRG Liquidating, LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned jointly administered chapter 11 cases (the "Cases") hereby move (this "Motion"), pursuant to sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for orders, substantially in the forms attached hereto as **Exhibit A** (the "Bidding Procedures Order") and **Exhibit B** (the "Sale Order"), (i) approving certain bidding procedures (the "Bidding Procedures") and scheduling an auction (the "Auction") and sale hearing (the "Sale Hearing") with respect to the sale (the "Sale") of any and all claims (the "Visa/MC Claims") the Debtors may hold in connection with the putative consolidated class

---

[1]     The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: VRG Liquidating, LLC (f/k/a Vestis Retail Group, LLC) (1295); VRF Liquidating, LLC (f/k/a Vestis Retail Financing, LLC) (9362); EMSOC Liquidating, LLC (f/k/a EMS Operating Company, LLC) (2061); VIH Liquidating, LLC (f/k/a Vestis IP Holdings, LLC) (2459); BS Liquidating, LLC (f/k/a Bob's Stores, LLC) (4675); EMSA Liquidating, LLC (f/k/a EMS Acquisition LLC) (0322); SC Liquidating 2, LLC (f/k/a Sport Chalet, LLC) (0071); SCVS Liquidating, LLC (f/k/a Sport Chalet Value Services, LLC) (7320); and SCTS Liquidating, LLC (f/k/a Sport Chalet Team Sales, LLC) (8015).  The Debtors' executive headquarters are located at 160 Corporate Court, Meriden, CT 06450.

action styled *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*,

Case No. 1:05-md-01720-JG-JO (such action, together with all other actions constituting a

reformation of the causes of action therein or in which the same claims are alleged, the

"Litigation"), (ii) authorizing and approving the Sale of the Visa/MC Claims to VonWin Capital

Management, L.P. (the "Stalking Horse Bidder") pursuant to that certain *Asset Purchase and

Sale Agreement*, dated as of February 28, 2018 (the "Stalking Horse APA") or to the party

submitting the highest or otherwise best offer for the Visa/MC Claims (the "Successful Bidder"),

and (iii) granting related relief.  In support of this Motion, the Debtors rely on the *Declaration of

Anna O'Reilly* attached hereto as **Exhibit C** (the "Declaration") and respectfully state as follows:

## I. JURISDICTION

1.      The United States Bankruptcy Court for the District of Delaware (the "Court")

has jurisdiction over these Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference* from the United States District Court for the District of

Delaware dated as of February 29, 2012.  This is a core proceeding within the meaning of

28 U.S.C. § 157(b)(2).  Venue of these Cases and the Motion in this district is proper under

28 U.S.C. §§ 1408 and 1409.

2.      Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of

a final judgment or order with respect to the Motion if it is determined that the Court, absent

consent of the parties, cannot enter final orders or judgments consistent with Article III of the

United States Constitution.

3.      The statutory bases for the relief requested herein are Bankruptcy Code sections

105 and 363, Bankruptcy Rule 6004, and Local Rule 6004-1.

## II.  BACKGROUND

### A.  General Background

4.      On April 18, 2016 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.

5.      The Debtors are authorized to continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On April 26, 2016, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors for these Cases (the "Committee").  *See* Docket No. 144.

6.      The detailed factual background relating to the Debtors and these Cases is set forth in the *Declaration of Mark T. Walsh in Support of First Day Motions* [Docket No. 2].

### B.  The Marketing Process

7.      The Debtors, in consultation with the Committee, actively solicited interest in the Visa/MC Claims.  Decl. ¶ 3.  To that end, the Debtors and the Committee developed a list of approximately thirty-six (36) potential bidders that might have an interest in acquiring the Visa/MC Claims (the "Potential Bidders").  *Id.*  The Potential Bidders are entities that have previously expressed an interest in purchasing the Debtors' Visa/MC Claims or that have expressed an interest in purchasing, or that have purchased, similar claims in other cases.  *Id.*

8.      On September 28, 2017, the Debtors contacted the Potential Bidders to solicit indications of interest in the Visa/MC Claims.  Decl. ¶ 4.[2]  Twenty (20) of the Potential Bidders, along with three (3) additional potential bidders that the Debtors had not reached out to but who had heard of the opportunity, requested additional documents and information.  *Id.*  Over the next

---

[2]      On October 2, 2017, the Debtors sent a follow up letter to each of the Potential Bidders that had not yet responded to the Debtors' initial correspondence.  Decl. ¶ 4.

few weeks, the Debtors provided these twenty-three (23) parties with additional documents and information relating to the Visa/MC Claims. *Id.* The deadline for Potential Bidders to submit indications of interest was October 13, 2017.[3] *Id.* Ultimately, five (5) of the Potential Bidders submitted indications of interest containing indicative bids to acquire the Visa/MC Claims. *Id.*

9.     During the process of soliciting indications of interest for the Visa/MC Claims, several of the Potential Bidders advised the Debtors that they would be willing to submit higher bids if the Debtors obtained additional documentary support for the Visa/MC Claims. Decl. ¶ 5. As a result, to maximize the value of the Visa/MC Claims to the estates, the Debtors suspended the marketing of the Visa/MC Claims and worked to obtain the additional documentary support that had been requested. *Id.* That process took several months. *Id.*

10.     Once the additional documentary support finally had been obtained, the Debtors reengaged with the Stalking Horse Bidder, who previously had presented the Debtors with the highest and best indication of interest. Decl. ¶ 6. On February 28, 2018, the Debtors and the Stalking Horse Bidder entered into the Stalking Horse APA, the terms of which are set forth below. *Id.* A copy of the Stalking Horse APA is attached as **<u>Exhibit 1</u>** to the Sale Order.

## C.  The Stalking Horse APA

11.     The following chart provides a summary of the material provisions of the Stalking Horse APA.[4]

| Term | Description |
| --- | --- |
| **Sellers** | VRG Liquidating, LLC (f/k/a Vestis Retail Group, LLC); BS Liquidating, LLC (f/k/a Bob's Stores, LLC); VRF Liquidating, LLC (f/k/a Vestis Retail Financing, LLC); EMSOC Liquidating, LLC (f/k/a |

---

[3]     Four (4) Potential Bidders requested an extension of the deadline to submit indications of interest, and the Debtors granted all four requests. Decl. ¶ 4.

[4]     To the extent of any inconsistencies between this summary and the actual terms of the Stalking Horse APA, the Stalking Horse APA shall control. Capitalized terms used but not defined in this summary shall have the meanings ascribed to such terms in the Stalking Horse APA.

| Term | Description |
|------|-------------|
|  | EMS Operating Company, LLC); VIH Liquidating, LLC (f/k/a Vestis IP Holdings, LLC); EMSA Liquidating, LLC (f/k/a EMS Acquisition LLC); SC Liquidating 2, LLC (f/k/a Sport Chalet, LLC); SCVS Liquidating, LLC (f/k/a Sport Chalet Value Services, LLC); SCTS Liquidating, LLC (f/k/a Sport Chalet Team Sales, LLC)<br><br>(*see* introductory paragraph of Stalking Horse APA (pg. 1)) |
| **Stalking Horse Bidder** | VonWin Capital Management, L.P.<br><br>(*see* introductory paragraph of Stalking Horse APA (pg. 1)) |
| **Acquired Assets** | All of the Debtors' right, title, and interest (now or in the future) to benefits arising from and/or relating to that certain putative consolidated class action entitled *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (Case No. 1:05-MD-1720-JG-JO) and the injuries alleged therein, including the right to a monetary recovery.<br><br>(*see* Recitals A & B of Stalking Horse APA (pg. 1)) |
| **Purchase Price** | $525,000.00 (the "Purchase Price")<br><br>(*see* § 1.1 of Stalking Horse APA) |
| **Representations and Warranties** | The Debtors and the Stalking Horse Bidder make certain limited representations and warranties.  The Debtors and the Stalking Horse Bidder expressly disclaim and do not make any warranties, guarantees, promises, or representations of any kind whatsoever regarding the Visa/MC Claims, including, but not limited to, the value of the Visa/MC Claims and the anticipated recovery or timing of recovery on the Visa/MC Claims.<br><br>(*see* §§ 2 & 3 of Stalking Horse APA) |
| **Termination** | The Stalking Horse APA may be terminated by the mutual written consent of the Debtors and the Stalking Horse Bidder.<br><br>The Debtors may terminate the Stalking Horse APA if the Stalking Horse Bidder materially breaches the Stalking Horse APA, including by failing to close the Sale on the Closing Date.<br><br>The Stalking Horse APA will terminate automatically upon consummation of a transaction pursuant to a definitive agreement with a Successful Bidder other than the Stalking Horse Bidder.<br><br>Unless otherwise agreed in writing by the Debtors and the Stalking Horse Bidder, the Stalking Horse APA will terminate automatically if the Sale Order is not obtained within thirty (30) days after the end of the marketing period (which marketing period terminates no more than thirty (30) days after entry of the Bidding Procedures Order), only if the Stalking Horse Bidder is not in breach of the Stalking Horse APA at such time and the failure to obtain entry of the Sale Order is not due to |

| Term | Description |
|---|---|
| | the action or inaction of the Stalking Horse Bidder. |
| | (*see* §§ 4.4(b) & 5.1 of Stalking Horse APA) |
| **Termination Fee** | If the Stalking Horse APA is terminated pursuant to Section 5.1(b) of the Stalking Horse APA because the Debtors consummate a transaction pursuant to a definitive agreement with a Successful Bidder other than the Stalking Horse Bidder, then, within three (3) business days after the date such sale is consummated, the Debtors shall pay the Stalking Horse Bidder a termination fee in the amount of $25,000 (the "Termination Fee") by wire transfer of immediately available funds.<br><br>(*see* § 5.2(d) of Stalking Horse APA) |

12.    The following chart discloses certain information required to be disclosed pursuant to Local Rule 6004-1(b).

| Term | Description |
|---|---|
| **Sale to Insider**<br>*Local Bankr. R. 6004-1(b)(iv)(A)* | The Stalking Horse Bidder is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code. |
| **Agreements with Management**<br>*Local Bankr. R. 6004-1(b)(iv)(B)* | None. |
| **Releases**<br>*Local Bankr. R. 6004-1(b)(iv)(C)* | None. |
| **Private Sale/No Competitive Bidding**<br>*Local Bankr. R. 6004-1(b)(iv)(D)* | The Debtors have proposed an open Auction in connection with the Sale.  The Debtors are authorized to seek out higher or better bids for a marketing period of no more than thirty (30) days following entry of the Bidding Procedures Order.<br><br>(*see* Stalking Horse APA §§ 4.4(a) & (b)) |
| **Closing and Other Deadlines**<br>*Local Bankr. R. 6004-1(b)(iv)(E)* | The closing of the transaction contemplated under the Stalking Horse APA shall take place within one (1) business day after the entry of the Sale Order, provided there is no stay pending appeal.<br><br>(*see* § 1.3(a) of Stalking Horse APA) |

| Term | Description |
|---|---|
| **Good Faith Deposit** <br> *Local Bankr. R. 6004-1(b)(iv)(F)* | The Stalking Horse Bidder made a good faith deposit in an amount of cash equal to 10% of the Purchase Price (the "Deposit"). <br><br> The Deposit (i) shall become property of the Debtors at the Closing (and be credited against the Purchase Price due and payable at the Closing), (ii) if the Stalking Horse APA is terminated pursuant to Section 5.1(a)(ii) thereof (because the Stalking Horse Bidder fails to timely close the transaction or otherwise materially breaches the Stalking Horse APA), shall be retained by the Debtors in accordance with Section 5.2(b) of the Stalking Horse APA as liquidated damages, or (iii) shall be returned to the Stalking Horse Bidder as set forth in Section 5.2(c) of the Stalking Horse APA (which provides for return of the Deposit within 3 business days after (a) termination as a result of mutual written consent, (b) execution of a definitive agreement with a Successful Bidder other than the Stalking Horse Bidder, if the Sale Order does not designate the Stalking Horse Bidder as a back-up bidder, or (c) consummation of a transaction pursuant to a definitive agreement with a Successful Bidder other than the Stalking Horse Bidder if the Sale Order does designate the Stalking Horse Bidder as a back-up bidder). <br><br> (*see* § 1.1 of Stalking Horse APA) |
| **Interim Arrangements with Stalking Horse Bidder** <br> *Local Bankr. R. 6004-1(b)(iv)(G)* | None. |
| **Use of Proceeds** <br> *Local Bankr. R. 6004-1(b)(iv)(H)* | None. |
| **Tax Exemption** <br> *Local Bankr. R. 6004-1(b)(iv)(I)* | None. |
| **Record Retention** <br> *Local Bankr. R. 6004-1(b)(iv)(J)* | None. |
| **Sale of Avoidance Actions** <br> *Local Bankr. R. 6004-1(b)(iv)(K)* | None. |
| **Successor Liability** <br> *Local Bankr. R. 6004-1(b)(iv)(L)* | None. |

| Term | Description |
|------|-------------|
| **Sale Free and Clear of Unexpired Leases** *Local Bankr. R. 6004-1(b)(iv)(M)* | None. |
| **Credit Bid** *Local Bankr. R. 6004-1(b)(iv)(N)* | None. |
| **Relief from Bankruptcy Rule 6004(h)** *Local Bankr. R. 6004-1(b)(iv)(O)* | The Debtors seek a waiver of the 14-day stay under Bankruptcy Rule 6004(h), as described in more detail below. (*see* § 1.3(a) of Stalking Horse APA) |

### III.  RELIEF REQUESTED

13.     By this Motion, the Debtors seek entry of the Bidding Procedures Order (i) approving the Bidding Procedures, a copy of which is attached as **Exhibit 1** to the Bidding Procedures Order; (ii) authorizing and approving the Debtors' entry into the Stalking Horse APA; (iii) approving the form and manner of notice of the Sale of the Visa/MC Claims (the "Sale Notice"), substantially in the form attached as **Exhibit 2** to the Bidding Procedures Order; (iv) establishing April 16, 2018 at 5:00 p.m. (Eastern Time) as the deadline for the submission of competing bids for the Visa/MC Claims (the "Bid Deadline"); and (v) scheduling (a) the Auction, if necessary, for April 19, 2018 at 1:00 p.m. (Eastern Time) by telephone and (b) the Sale Hearing for April 23, 2018 at 11:00 a.m. (Eastern Time), subject to the Court's availability.

14.     The Debtors further request the Court enter the Sale Order upon the conclusion of the Sale Hearing, authorizing the Sale of the Visa/MC Claims, free and clear of claims, liens, and other interests, to the Successful Bidder, pursuant to the Stalking Horse APA or an asset purchase agreement entered into with a Successful Bidder other than the Stalking Horse Bidder.

### IV.  BASIS FOR RELIEF

**A.  The Sale Is Within the Sound Business Judgment of the Debtors and Should Be Approved**

15.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Although section 363 of the Bankruptcy Code does not set forth a standard for determining when a sale or disposition of property of the estate should be authorized, courts in the Third Circuit generally authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor.  *See*, *e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

16.     The sale of estate assets outside the ordinary course of business is appropriate if: (i) there is a sound business purpose for the sale, (ii) the debtor has provided interested parties with adequate and reasonable notice, (iii) the proposed sale price is fair and reasonable, and (iv) the purchaser has acted in good faith.  *See*, *e.g.*, *In re Abbotts Dairies*, 788 F.2d 143, 145-57 (3d Cir. 1986); *In re Exaeris, Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008); *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).

17.     A debtor's showing of a sound business purpose need not be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reasons."  *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).  A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be found where such a sale is necessary to preserve and enhance the value of the assets for the debtor's estate, its creditors, or interest holders.  *See, e.g.*, *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Four B. Corp. v. Food Barn*

*Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (stating that, in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand").

18.     Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code.  Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper.  *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993); *Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002).  Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets.  *See, e.g., Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws").

19.     The Debtors submit that sufficient business justifications exist to sell the Visa/MC Claims to the Stalking Horse Bidder (or other Successful Bidder).  The Debtors believe that the sale process proposed herein will achieve the highest or otherwise best price for the Visa/MC Claims because the Debtors are subjecting the value of the Visa/MC Claims to market testing through the solicitation of competing bids and an auction process.  Decl. ¶ 7.  The Sale is also in good faith within the meaning of *Abbotts Dairies*.  Decl. ¶ 8.  The Debtors represent that no

insider will gain an unfair advantage from the Sale pursuant to the Bidding Procedures and that all parties in interest will receive adequate notice of the Sale, as further described below.  Decl. ¶¶ 7 & 8.  Accordingly, because the Sale will further the Debtors' efforts to maximize the value of the estates and successfully prosecute these Cases, it represents a sound exercise of business judgment.  Decl. ¶ 8.

**B.  The Termination Fee Is Reasonable and Should Be Approved**

20.    Local Rule 6004-1(c)(i)(C) provides that a bidding procedures motion must highlight "[a]ny provisions providing an initial or 'stalking horse' bidder a form of bid protection."  Local Rule 6004-1(c)(i)(C).  The Debtors have complied with this requirement by including herein the amount sought as a Termination Fee by the Stalking Horse Bidder.

21.    The Third Circuit Court of Appeals has stated that bidder protections, such as termination or break-up fees, may be approved when the fee provides some postpetition benefit to the debtor's estate.  *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 536 (3d Cir. 1999).  The *O'Brien* court determined that a break-up fee provides an actual benefit to a debtor's estate in two circumstances.  The first such circumstance is where "assurance of a break-up fee promote[s] more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited."  *Id.* at 537.  Second, when bidding incentives induce a bidder to research the value of the asset that is being sold and submit a bid that serves as a minimum on which other bidders can rely, "the bidder may have provided a benefit to the estate by increasing the likelihood that the price at which the [asset] is sold will reflect its true worth."  *Id.*

22.    The paramount goal in any proposed sale of property of a debtor's estate is to maximize the proceeds received by the estate.  *See, e.g.*, *Food Barn Stores*, 107 F.3d at 564–65

(in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Resources, Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992).  Courts recognize that procedures intended to enhance competitive bidding are consistent with this goal because such procedures "encourage bidding and maximize the value of the debtor's assets."  *Id.*; *see also In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) ("Break-up fees and other strategies may be legitimately necessary to convince a 'white knight' to enter the bidding by providing some form of compensation for the risks it is undertaking.").

23.    The Third Circuit has referred to nine factors that are relevant in deciding whether to award a break-up fee: (1) the presence of self-dealing or manipulation in negotiating the break-up fee and expense reimbursement; (2) whether the fee harms, rather than encourages, bidding; (3) the reasonableness of the break-up fee and expense reimbursement relative to the purchase price; (4) whether the "unsuccessful bidder place[d] the estate property in a sales configuration mode to attract other bidders to the auction"; (5) the ability of the request for a break-up fee and expense reimbursement "to attract or retain a potentially successful bid, establish a bid standard or minimum for other bidders, or attract additional bidders"; (6) the correlation of the fee to a maximization of value of the debtor's estate; (7) the support of the principal secured creditors and creditors' committees of the break-up fee and expense reimbursement; (8) the benefits of the safeguards to the debtor's estate; and (9) the "substantial adverse impact [of the break-up fee] on unsecured creditors, where such creditors are in opposition to the break-up fee."  *See O'Brien*, 181 F.3d at 536.

24.    The Debtors submit that the foregoing factors are met under the facts and circumstances of these Cases, as the proposed Termination Fee is necessary to the success of the Auction and sale process and therefore provides an actual benefit to the Debtors' estates.  Decl.

¶ 8.  The Stalking Horse Bidder is not affiliated in any way with the Debtors, and the Stalking

Horse APA and the Termination Fee are the result of arms' length, good faith negotiation

between the parties.  *Id.*  Importantly, the protection provided by the Termination Fee was a

necessary inducement for the Stalking Horse Bidder to enter into the Stalking Horse APA, and,

without the Stalking Horse APA, it would be challenging to maximize the value of the Visa/MC

Claims because the Stalking Horse APA provides a "floor" purchase price.  *Id.*  By agreeing to

the Termination Fee and thereby securing the Stalking Horse Bidder's bid, the Debtors hope to

induce the submission of additional bids that otherwise may have never been made and without

which bidding may have been limited.  The Termination Fee serves as a material inducement for

the Stalking Horse Bidder's offer to purchase the Visa/MC Claims, and also is a precondition to

the Stalking Horse Bidder's commitment to hold open its offer.  *Id.* at ¶ 8 n.3.

      25.      The Debtors submit that the proposed Termination Fee will not chill bidding, is

reasonable, and will enable the Debtors to maximize the value of their estates.  The Stalking

Horse APA establishes a legitimate price floor, which allows the Debtors to evaluate properly

other competing bids that may be materially higher or otherwise better than the Stalking Horse

Bidder's bid.  In addition, the $25,000 Termination Fee is reasonable in relation to the

consideration provided under the Stalking Horse APA.  *See, e.g.*, *In re Aquion Energy, Inc.*, Case

No. 17-10500 (KJC) (Bankr. D. Del. June 6, 2017) (approving 4.5% break-up fee); *In re Malibu

Lighting Corp.*, Case No. 15-12080 (KG) (Bankr. D. Del. May 9, 2016) (approving 3% break-up

fee); *In re Am. Hospice Mgmt. Holdings, LLC*, Case No. 16-10670 (LSS) (Bankr. D. Del. Apr. 7,

2016) (approving 3% break-up fee); *In re Vertis Holdings, Inc.*, Case No. 12-12821 (CSS)

(Bankr. D. Del. Jan. 23, 2014) (approving 3% break-up fee).  The Termination Fee, which is

4.8% of the Purchase Price proposed to be paid by the Stalking Horse Bidder, is "a fair and

reasonable percentage of the proposed purchase price." *In re S.N.A. Nut Co.*, 186 B.R. 98, 102 n.5 (Bankr. N.D. Ill. 1995). The Termination Fee is customary for transactions of this type in bankruptcy and not "so substantial that it provides a 'chilling effect' on other potential bidders." *Id.*; *see also In re Wintz Cos.*, 230 B.R. 840, 847 (B.A.P. 8th Cir. 1999).

26.    In sum, the Termination Fee was the product of arms' length negotiations between the Debtors and the Stalking Horse Bidder. Without this protection, the Stalking Horse Bidder would not have entered into the Stalking Horse APA. This protection is warranted in light of Stalking Horse Bidder's role as the "stalking horse" in the Sale.

**C. The Bidding Procedures Are Reasonable and Appropriate**

27.    The Debtors submit that under the facts and circumstances surrounding their proposed Sale of the Visa/MC Claims and these Cases generally, the Bidding Procedures are reasonable and appropriate and necessary to their efforts to preserve and maximize estate value. Decl. ¶ 7.

28.    Local Rule 6004-1(b)(iv)(F) provides that "[t]he Sale Motion must highlight whether the proposed purchaser has submitted or will be required to submit a good faith deposit and, if so, the conditions under which such deposit may be forfeited." Local Rule 6004-1(b)(iv)(F). Local Rules 6004-1(c)(i)(A) and (B) further provide that a bidding procedures motion must highlight "[a]ny provision governing an entity becoming a qualified bidder" and "[a]ny provision governing a bid being a qualified bid." Local Rule 6004-1(c)(i)(A) & (B). The Bidding Procedures, attached as **Exhibit 1** to the Bidding Procedures Order, provide as follows with respect to qualified competing bids for the Visa/MC Claims:[5]

---

[5]    To the extent of any inconsistencies between this summary and the actual terms of the Bidding Procedures, the Bidding Procedures shall control. Capitalized terms used but not otherwise defined in this summary shall have the meanings ascribed to such terms in the Bidding Procedures.

a)  To participate in the Auction, a person interested in submitting a bid for the Visa/MC Claims must, on or before the Bid Deadline deliver by electronic mail to counsel to the Debtors, Klee, Tuchin, Bogdanoff & Stern LLP, Attn: David M. Guess, Esq. at dguess@ktbslaw.com and counsel to the Committee, Cooley LLP, Attn: Jay R. Indyke, Esq. at jindyke@cooley.com: (i) proof of its financial capacity to close a proposed transaction, (ii) a binding proposal in the form of an asset purchase agreement containing substantially the same terms as the Stalking Horse APA (subject to the exceptions noted below), and (iii) a redline indicating the changes made to the Stalking Horse APA.  In addition, the bidder must by the Bid Deadline wire transfer to the Debtors a good faith deposit of 10% of the proposed purchase price, which is to be wired to an account that will be specified by the Debtors.[6]

b)  All bids must (i) indicate a purchase price of at least $550,000.00 in cash consideration, (ii) remain irrevocable until twenty-four (24) hours after the conclusion of the Sale Hearing and continue to remain irrevocable if the bid is selected as the Successful Bid or a back-up bid, and (iii) not provide for any break-up fee, termination fee, expense reimbursement, or any other type of transaction fee.

c)  Any party interested in submitting a bid for the Visa/MC Claims should contact counsel to the Debtors at the above email address in advance of the Bid Deadline in order to obtain the form of asset purchase agreement and additional information that may help such party assess and value the Visa/MC Claims.

29.    If the Debtors receive a qualified competing bid, they will conduct the Auction on April 19, 2018 at 1:00 p.m. (Eastern Time) by telephone to determine the highest or otherwise best bid for the Visa/MC Claims.  Any creditor may telephonically attend the Auction, and any creditor who wishes to do so must inform Debtors' counsel by email to David M. Guess, Esq. at dguess@ktbslaw.com, with a copy to counsel to the Committee, Cooley LLP, Attn: Jay R. Indyke, Esq. at jindyke@cooley.com, at least forty-eight (48) hours prior to the Auction.  No later than twenty-four (24) hours prior to the Auction, the Debtors will provide each party who submitted a qualified bid, as determined by the Debtors in consultation with the Committee, and each creditor who requested to telephonically attend the Auction with the telephone number and

---

[6]    All good faith deposits of bidders other than the Successful Bidder and any back-up bidder will be returned within three (3) business days after the selection of the Successful Bid.  The good faith deposit of any back-up bidder will be returned to such back-up bidder within three (3) business days after the consummation of the Sale with the Successful Bidder.

dial-in instructions to telephonically attend the Auction.  The Debtors propose that the following

procedures govern any such Auction:

    a)   the Debtors will announce the highest or otherwise best bid received thus far, which will be the starting bid at the commencement of the Auction;

    b)   bidding will begin at the starting bid and will subsequently continue in minimum increments of at least $10,000.00;

    c)   all bids made during the Auction must remain irrevocable until twenty-four (24) hours after the conclusion of the Sale Hearing and continue to remain irrevocable if the bid is selected as the Successful Bid or a back-up bid;

    d)   the Auction must be conducted openly and will be transcribed to ensure an accurate recording of the bidding;

    e)   each bidder participating in the Auction will be required to confirm on the record at the Auction that it has not engaged in any collusion with respect to the bidding process or the Sale;

    f)   absent irregularities in the conduct of the Auction, bids made after the Auction is closed will not be considered; and

    g)   all bidders at the Auction will be deemed to have consented to the exclusive jurisdiction of the Court with respect to all matters relating to the Auction and the Sale.

    30.    As set forth in more detail in the Bidding Procedures, at the conclusion of the

Auction the Debtors, in consultation with the Committee, will select the highest or otherwise best

bid for the Visa/MC Claims and may also select a back-up bid.  The Debtors, in consultation

with the Committee, reserve the right to modify the Bidding Procedures as may be necessary or

appropriate to maximize value for the Debtors' estates, provided that any such modifications

shall not be inconsistent with the Bidding Procedures Order.

**D.  The Form of Sale Notice Is Appropriate**

31.     Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors with twenty-one (21) days' notice of the Sale Hearing.  Pursuant to Bankruptcy Rule 2002(c), such notice must include the date, time, and place of the Auction and the Sale Hearing and the deadline for filing any objections to the relief requested in the Motion.

32.     The Debtors will serve this Motion on: (i) the U.S. Trustee; (ii) the Committee; (iii) the Potential Bidders and all other parties that have expressed a potential interest in purchasing the Visa/MC Claims; and (iv) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002 (the "Notice Parties").  Within three (3) business days after entry of the Bidding Procedures Order, the Debtors will also file the Sale Notice on the docket in these Cases and serve a copy of the Bidding Procedures Order, Bidding Procedures, and Sale Notice on the Notice Parties.

33.     The Debtors propose that the deadline to file objections, if any, to the Sale shall be seven (7) days before the Sale Hearing (the "Sale Objection Deadline").  The Debtors request that any objections (i) be in writing, (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of the Court, (iii) state with particularity the legal and factual basis for the objection, and (iv) be filed with the Court and served so as to be **actually received** no later than the Sale Objection Deadline by the following parties: (a) counsel to the Debtors, (i) Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, Thirty-Ninth Floor, Los Angeles, California 90067, Attn:  Michael L. Tuchin, Esq. and David M. Guess, Esq., and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Robert S. Brady, Esq. and Robert F. Poppiti, Jr., Esq.; (b) the U.S. Trustee, 844 King Street, Room 2207, Wilmington, Delaware 19801, Attn: Jane M.

Leamy, Esq. and Timothy Fox, Esq.; and (c) counsel to the Committee (i) Cooley LLP, The

Grace Building, 1114 Avenue of the Americas, New York, New York 10036, Attn: Jay R.

Indyke, Esq. and Evan Lazerowitz, Esq., and (ii) Polsinelli PC, 222 Delaware Avenue, Ste. 1101,

Wilmington, Delaware 19801, Attn: Christopher A. Ward, Esq. and Shanti M. Katona, Esq.

34.    The Debtors submit that the foregoing notice procedures satisfy Bankruptcy Rule

2002 and Local Rule 2002-1(b) and provide adequate and sufficient notice of the Auction, the

Sale Hearing, and the related deadlines.

**E.  The Sale of the Visa/MC Claims Free and Clear of Claims, Liens, and Other Interests Is Authorized by Bankruptcy Code Section 363(f)**

35.    Under section 363(f) of the Bankruptcy Code, a debtor may sell property "under

subsection (b) and (c) free and clear of any interest in such property of an entity other than the

estate."  In particular, section 363(f) authorizes a debtor to sell property free and clear if:

> 1)  applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> 2)  such entity consents;
>
> 3)  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> 4)  such interest is in bona fide dispute; or
>
> 5)  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  Because section 363(f) is stated in the disjunctive, satisfaction of any one of

its five requirements will suffice to warrant approval of the proposed Sale of the Visa/MC

Claims free and clear of all claims, liens, and other interests ("Adverse Interests").  *See, e.g.*, *In*

*re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002); *Folger Adam Sec., Inc. v.*

*DeMatteis/MacGregor, JV*, 209 F.3d 252, 257 (3d Cir. 2000) (section 363(f) authorizes the sale

of a debtor's assets free and clear of all liens, claims and interests if "any one of [the] five prescribed conditions" is met).

36.    Furthermore, courts have held that they have the equitable power to authorize sales free and clear of adverse interests that are not specifically covered by section 363(f).  *See, e.g.*, *In re Trans World Airlines, Inc.*, No. 01-0055 (PJW), 2001 WL 1820325, at *3 & *6 (Bankr. D. Del. Mar. 27, 2001); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).

37.    Here, the Debtors are unaware of any Adverse Interests against the Visa/MC Claims.  Decl. ¶ 9.  Nonetheless, even if an Adverse Interest were to be asserted, because the Debtors will satisfy the requirements of section 363(f) on one or more of grounds, approving the Sale free and clear of all Adverse Interests is warranted.

38.    Accordingly, the Debtors request that the Sale be approved free and clear of all Adverse Interests, with any such Adverse Interests to attach to the proceeds of the Sale in the order of their priority, with the same validity, force, and effect that they now have against the Visa/MC Claims, subject to any rights, claims, and defenses the Debtors or any parties in interest may possess with respect thereto.

**F.  The Successful Bidder Should Be Afforded All Protections Under Bankruptcy Code Section 363(m) as a Good Faith Purchaser**

39.    The Debtors request the Court to find that the Stalking Horse Bidder or other Successful Bidder is entitled to the benefits and protections provided by Bankruptcy Code section 363(m) in connection with the Sale.  Section 363(m) provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  Section 363(m) thus protects the good faith purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order authorizing the sale is reversed on appeal.

40.    Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit has stated that a good faith purchaser under section 363(m) is "one who purchases in 'good faith' and for 'value.'"  *Abbotts Dairies*, 788 F.2d at 147.  To constitute a lack of good faith, a party's conduct in connection with the sale usually must amount to "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."  *Id.*; *see also In re Perona Bros., Inc.*, 186 B.R. 833, 839 (D.N.J. 1995); *In re Bedford Springs Hotel, Inc.*, 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989).

41.    The Stalking Horse APA represents an arm's length negotiated transaction in which the Stalking Horse Bidder, who is not an insider of the Debtors, acted in good faith and without fraud or collusion of any kind.  Decl. ¶ 8.  Accordingly, the Debtors request the Court to find that the Stalking Horse Bidder has purchased the Visa/MC Claims in good faith within the meaning of section 363(m).  The Court should likewise find that, as the Stalking Horse APA was entered into without fraud or collusion of any kind, the Stalking Horse APA does not constitute an avoidable transaction pursuant to section 363(n) of the Bankruptcy Code.

**G.  Bankruptcy Rule 6004(h) Should Be Waived**

42.    The Debtors also request that the Court waive any applicable stay of the Sale Order under Bankruptcy Rule 6004(h) or otherwise.  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to maximize and preserve value for their estates.  Waiving any applicable stay of the Sale Order will enable the Debtors to close on the

Sale immediately and thereby bring into the estates the sale proceeds of the Visa/MC Claims as soon as possible.  The nature of the relief sought herein justifies immediate relief.

## V.  NOTICE

43.     The Debtors will provide notice of this Motion to: (i) the U.S. Trustee; (ii) the Committee; (iii) the Potential Bidders and all other parties that have expressed a potential interest in purchasing the Visa/MC Claims; and (iv) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of page intentionally left blank.]*

## VI.  CONCLUSION

WHEREFORE, the Debtors request entry of the Bidding Procedures Order and Sale

Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated:  March 2, 2018

/s/ Jaime Luton Chapman

Robert S. Brady, Esq. (DE Bar No. 2847)
Robert F. Poppiti, Jr., Esq. (DE Bar No. 5052)
Jaime Luton Chapman, Esq. (DE Bar No. 4936)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel:    (302) 571-6600
Fax:    (302) 571-1253
Email: rbrady@ycst.com
        rpoppiti@ycst.com

and

Michael L. Tuchin, Esq.
David M. Guess, Esq.
Sasha M. Gurvitz, Esq.
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Tel:    (310) 407-4031
Fax:    (310) 407-9090
Email: mtuchin@ktbslaw.com
        dguess@ktbslaw.com
        sgurvitz@ktbslaw.com

*Counsel to the Debtors and
Debtors in Possession*